**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION**

ZACKERY CASH                                                          **PLAINTIFF**

**v.**                                                         **CIVIL ACTION NO.:  1:25-CV-022-SA-DS**

**SILMAN VENTURE CORPORATION D/B/A
SILMAN INDUSTRIES**                                          **DEFENDANT**

**COMPLAINT
JURY TRIAL DEMANDED**

**COMES NOW** Plaintiff, Zackery Cash, by and through counsel, Watson & Norris, PLLC, brings this action to recover damages for violations of his rights pursuant to Title VII of the Civil Rights Act of 1964 for race discrimination and violation of his rights pursuant to 42 U.S.C. § 1981 for race discrimination against the Defendant, Silman Venture Corporation d/b/a Silman Industries (SMVC).  In support of this cause, the Plaintiff would show unto the Court the following facts to-wit:

**THE PARTIES**

1.      Plaintiff, Zackery Cash, is a 25-year-old white male resident of Alcorn County, Mississippi.

2.      Defendant, Silman Venture Corporation d/b/a Silman Industries (SMVC), is a California corporation licensed to do business in the state of Mississippi that may be served with process by serving its registered agent, C T Corporation System, 645 Lakeland East Drive, Suite 101, Flowood, Mississippi 39232.

**JURISDICTION AND VENUE**

3.      This Court has federal question jurisdiction pursuant to Title VII of the Civil Rights Act of 1984 and 42 U.S.C. § 1981.

4.      This Court has subject matter jurisdiction and venue is proper in this Court.

5.    Plaintiff filed a Charge of Discrimination with the EEOC on January 22, 2024, a true and correct copy of which is attached as Exhibit "A." The EEOC issued a Notice of Right to Sue on November 15, 2024, a true and correct copy of which is attached as Exhibit "B." Plaintiff timely files this action within ninety (90) days of receipt of his Notice of Right to Sue.

**STATEMENT OF FACTS**

6.    Plaintiff is a 25-year-old white male resident of Alcorn County and Corinth, Mississippi.

7.    Plaintiff was hired on June 1, 2023, as an Apprentice Electrician at SilMan Venture Corporation d/b/a SilMan Industries (SMVC).

8.    On August 10, 2023, Plaintiff was involved in a verbal altercation with Apprentice Electrician Rob Carouthers (black male).

9.    Following this altercation, Mr. Carouthers alleged to General Foreman Chris Gann (white male) that Plaintiff had threatened Mr. Carouthers with a utility knife.

10.    Plaintiff contends this allegation is false.

11.    On August 10, 2023, Mr. Gann informed Plaintiff that he was terminated, allegedly for possessing a utility knife and using it to threaten Mr. Carouthers.

12.    Plaintiff contends this allegation is false and was a pretext for discrimination against Plaintiff due to his race.

13.    On January 22, 2024, Plaintiff filed an EEOC Charge of race discrimination.

14.    On March 15, 2024, in response to Plaintiff's Charge, SMVC submitted a Position Statement to the EEOC.

15.    SMVC's Position Statement alleges that, "Both the SilMan general foreman (Chris Gann) and foreman (Jason Kent) on the project Cash witnessed the argument

2

between Cash and Carouthers.

16.    While both Cash and Carouthers were disciplined following the incident, Cash was subject to more serious discipline (termination of his employment) because Gann and Kent determined that Cash was the aggressor in the altercation and because Cash pulled a knife out of his pocket and wielded it in a manner which suggested he was willing to use it.

17.    The Company's decision to terminate Cash's employment following his argument with Carouthers was based purely on Cash's behavior, not his race."

18.    Plaintiff contends this allegation is false, as will be elaborated further below.

19.    SMVC's Position Statement alleges that, "On the morning of Aug. 10, 2023, Chris Gann was meeting with Kent near a fabrication table inside a warehouse building on the project. At some point during their conversation, Chris Gann and Kent heard raised voices and observed that Cash and Carouthers were engaged in a verbal argument some distance away. Cash was standing on the ground shouting up at Carouthers, who was standing on a raised lift. Cash saw Kent and Chris Gann standing by the fabrication table, and stormed over to them while Carouthers was lowering the lift to the ground. Cash was clearly agitated and was ranting about Carouthers, repeatedly referring to him as a "bitch" and other derogatory terms, and told Chris Gann that he would not work with Carouthers anymore because Carouthers had just "flipped" on him. While Cash was loudly complaining about Carouthers to Chris Gann and Kent, Carouthers approached them, holding a piece of Unistrut loosely in his hand. Carouthers overheard Cash calling him derogatory names, and responded to Cash by stating "call me a bitch again." Notably, Carouthers did not raise the piece of Unitstrut in his hand, or otherwise make any threatening gestures with it, and only responded verbally to Cash's insults."

3

20. Plaintiff contends this allegation does not accurately characterize the events that occurred.

21. When Plaintiff approached Chris Ganna and Jason Kent, he did so deliberately for the purpose of de-escalating the situation and seeking assistance from supervisorial staff.

22. SMVC's allegation that Mr. Carouthers was not threatening because he held the Unistrut "loosely in his hand" and "did not raise the piece of Unistrut in his hand, or otherwise make any threatening gestures with it" is false.

23. Plaintiff contends that as he walked up to Plaintiff, Mr. Carouthers held a long piece of metal (about 4-5 feet long and about 1.5 inches in diameter) in his hand and he lifted it up and stated, "I am going bash your brain in…".

24. Plaintiff was steadily retreating, walking away, as Mr. Carouthers was walking toward him and making threatening statements.

25. Plaintiff further denies that he referred to Mr. Carouthers as a "bitch" or used any other insults toward him, as alleged above.

26. Rather, despite feeling threatened by Mr. Carouther's increasingly angry and threatening manner, Plaintiff endeavored to remain professional in his interactions.

27. Plaintiff adamantly contends therefore that he was not the "aggressor" or the "instigator" of the altercation" as alleged by SMVC.

28. SMVC's Position Statement alleges that, "Cash and Carouthers continued to argue back and forth with each other. While Chris Gann was attempting to determine the source of the disagreement between the two apprentices, Cash abruptly escalated the verbal altercation by pulling his work knife from his pocket, releasing its blade, switching the grip of the knife in his hand in a threatening manner, and assuming an aggressive

4

posture. Chris Gann identified the knife as a Klein hawkbill, which is a knife with a two to three inch curved blade often used by electricians in the course of their duties (such as to cut wire). Fearing that Cash was preparing himself to slash at Carouthers with his knife, Chris Gann quickly stepped between the two men and began moving Carouthers away from Cash for his protection and to deescalate the confrontation. While Chris Gann was pushing Carouthers back from Cash, Carouthers shouted something to the effect that he would hit or smack Cash "upside the head" if he tried using the knife. (*See,* Exh. 4 – Incident Report"

29.     Here, SMVC's Position Statement again mischaracterizes the events that occurred.

30.     Plaintiff had been holding a small utility knife ever since he was walking away from Mr. Carouthers to appeal to Mr. Gann and Mr. Kent.

31.     The knife was not a hawkbill knife, as alleged by SMVC. Rather, it was a utility knife and had a blade smaller than two inches.

32.     Plaintiff typically used it to sharpen his pencil, which he also carried as he was walking up to Mr. Gann and Mr. Kent.

33.     Plaintiff did not "abruptly" pull the knife out of his pocket, i.e., it was already in his hand and the blade was already out, and he did not 'switch the grip of the knife in a threatening manner' or 'assume an aggressive posture'.

34.     As noted above, Plaintiff was consistently walking away from Mr. Carouthers, attempting to deescalate the situation while Mr. Carouthers was openly threatening to use it to bash Plaintiff's brain.

35.     Also, at no point did Mr. Gann step between Plaintiff and Mr. Carouthers, as alleged by SMVC.

36.     Mr. Gann was compelled, however, to redirect Mr. Carouthers to go outside, to get him away from Plaintiff.

37.     As Mr. Carouthers was led outside, he turned back and yelled, "I've got something for your ass".

38.     SMVC's Position Statement alleges that, "Chris Gann successfully maneuvered Carouthers outside of the building, where Chris Gann spent about ten minutes calming Carouthers down and questioning him about the argument with Cash. Based on his conversation with Carouthers, Chris Gann understood that the argument had started when Cash accused Carouthers of cutting a piece of conduit incorrectly, which Carouthers had disputed. When Chris Gann asked about the piece of Unistrut in his hand, Carouthers explained that he had to move the piece of metal out of the way in order to exit the lift and that he had not bothered to put it back down in his hurry to join Chris Gann, Kent, and Cash by the fabrication table. Chris Gann found Carouthers' explanation credible, as Carouthers had done nothing more than hold the piece of Unistrut in hand by his side after joining Chris Gann, Kent, and Cash. Meanwhile, Kent calmed Cash down and redirected him by sending him back to work."

39.     Plaintiff cannot speak to events where he was not present, i.e., the conversation outside the building between Mr. Gann and Mr. Carouthers.

40.     Plaintiff contends, however, that prior to being directed outside the building, Mr. Carouthers threatened to bash his brain in, and he held the Unistrut up in his hand in a clearly threatening manner.

41.     Plaintiff disputes SMVC's allegation that "Kent calmed Cash down…".

42.     Plaintiff did not make threatening statements toward Mr. Carouthers, and he did not become volatile.

6

43. After Mr. Carouthers was led outside by Mr. Gann, Mr. Carouthers immediately got back on the lift and returned to work.

44. SMVC's Position Statement alleges that, "Once Carouthers was calm and Cash had been sent away from the immediate area, Chris Gann went to his office to phone the project manager, Matt Gann, and discuss the incident that he and Kent had just witnessed. Matt Gann instructed Chris Gann to immediately send both Cash and Carouthers home for the day while Matt Gann considered what actions to take next. Chris Gann first located Cash on the worksite to tell him that he was being sent home. Since Cash had not driven to the worksite, Chris Gann drove Cash back to the motel he was staying in for the duration of the project. During their car ride, Cash asked Chris Gann if he was going to be fired from the project, and Chris Gann said he thought he would be let go. During their conversation, Cash confirmed that his argument with Carouthers began when he criticized the manner in which Carouthers had cut a piece of conduit. Cash also attempted to downplay his actions during the altercation by claiming that he had just taken his knife out of his pocket to "sharpen a pencil.""

45. Plaintiff contends this is not an accurate characterization of the events that occurred.

46. After Mr. Chris Gann came back inside from talking with Mr. Carouthers, he found Plaintiff working on the lift.

47. At that point, Mr. Gann informed Plaintiff that he was terminated, (i.e., it was not decided later).

48. Mr. Gann gave no explanation as to why Plaintiff was being terminated. Mr. Gann then drove Plaintiff back to the motel.

49. During that drive, Plaintiff did not ask if he was going to be terminated, since

7

Mr. Gann had already confirmed that.

50.     As SMVC's Position Statement alleges, Plaintiff explained that Mr. Carouthers had become angry when Plaintiff attempted to explain to him how he had cut a piece of conduit incorrectly, i.e., the incident started because Mr. Carouthers became defensive and angry about being corrected.

51.     Regarding the knife in question, as explained above, the knife was in Plaintiff's hands the entire time, along with the pencil, and Plaintiff adamantly denies that he ever used it in a threatening manner.

52.     SMVC's Position Statement alleges that, "After dropping Cash off at his motel, Chris Gann drove back to the worksite and notified Carouthers that he was being sent home. As Carouthers had driven to the worksite himself, Chris Gann did not need to provide Carouthers with a ride home. After meeting with Carouthers to send him home, Chris Gann went back to this office and spoke with Matt Gann again. By that time, Matt Gann had discussed the incident between Cash and Carouthers with the SilMan Safety Manager and reached a final decision. SilMan decided to terminate Cash's employment based on his violation of SilMan's safety policies and policies prohibiting workplace violence, and based on Cash's incredibly poor judgment in pulling out his knife in an aggressive, threatening manner in the middle of a heated verbal argument. (*See*, Exh. 5 - Termination Notice). SilMan also suspended Carouthers for the rest of the day and issued him a Written Warning for his unprofessional conduct and poor judgment. (*See*, Exh. 6 – Written Warning)."

53.     Plaintiff contends this allegation is false.

54.     Mr. Gann informed Plaintiff that he was terminated before he was driven back to the motel.

55.     Moreover, Plaintiff adamantly denies that he used his knife in an aggressive and threatening manner.

56.     Whereas Mr. Carouthers was openly threatening and aggressive to Plaintiff (i.e., raising the Unistrut and stating, "I'm going bash your brain in!"), Plaintiff was actively trying to deescalate the situation, walking away from Mr. Carouthers and at no point holding the knife in a threatening or aggressive manner.

57.     Despite this discrepancy, whereas Plaintiff was terminated, Ms. Carouthers was allowed to remain employed.

58.     SMVC's Position Statement alleges that, "SilMan decided to terminate Cash, and issue less severe discipline to Carouthers, based on it assessment that Cash's behavior warranted immediate termination while Carouthers' behavior did not. While the verbal argument between Cash and Carouthers did not actually escalate to physical violence, as Chris Gann was able to stop the knife attack, the situation could have resulted in serious physical injury due to Cash suddenly escalating their disagreement by pulling out his work knife in an aggressive and threatening manner. Based on his body language and his manipulation of his knife (i.e., releasing the blade and aggressively shifting his grip), both neutral witnesses to the argument (Kent and Chris Gann) genuinely feared that Cash intended to slash at or stab Carouthers. SilMan cannot and does not tolerate serious threats of, or attempts at, physical violence on its jobsites. SilMan also determined that Carouthers had shown poor judgment and violated the Company's policies by continuing the verbal argument once Cash had approached the foreman and general foreman, and by responding to Cash's fighting stance with verbal threats instead of just walking away from the altercation. In Chris Gann and Kent's opinion, however, Carouthers had been provoked and his immediate defensive reaction to Cash's threat of violence did not warrant

9

termination. Under the circumstances, SilMan believed that sending him home and issuing him a written warning was sufficient to dissuade Carouthers from further incidents of poor judgment."

59. Plaintiff contends this allegation is a patently false characterization of the events that occurred.

60. At no point did Plaintiff attempt a "knife attack" or even raise this utility knife in a threatening or aggressive manner.

61. Moreover, Mr. Gann did come between Plaintiff and Mr. Carouthers; rather he merely verbally directed Mr. Carouthers to walk outside with him.

62. The two-inch blade was always extended, i.e., the blade was already released when Mr. Carouthers walked up, and Plaintiff was using it to sharpen a pencil he carried with him; Plaintiff flatly denies that he aggressively shifted the grip or otherwise intimated an intention to use it.

63. As stated above, Mr. Carouthers, on the other hand, held the baseball bat sized Unistrut up threateningly and openly stated, "I will bash your brain in."

64. Plaintiff contends that when he attempted to explain to Mr. Carouthers how he had cut a piece of conduit incorrectly it was Mr. Carouthers who became angry and initiated the increasingly heated argument.

65. Although Plaintiff attempted to retreat and de-escalate the situation, Mr. Carouthers was increasingly angry and aggressive.

66. Plaintiff contends this false allegation by SMVC is a pretext for race discrimination.

## CAUSES OF ACTION
### COUNT I: VIOLATION OF TITLE VII - RACE DISCRIMINATION

10

67.     Plaintiff re-alleges and incorporates all averments set forth in paragraphs 1 through 66 above as if fully incorporated herein.

68.     Defendant has discriminated against Plaintiff because of his race based on the facts identified above which constitutes a violation of Title VII.

69.     Plaintiff has suffered lost wages, benefits and other pecuniary losses as well as deep humiliation, axiety and emotional distress.

70.     The unlawful actions of Defendant complained of above were intentional malicious, and taken in reckless disregard of the statutory rights of Plaintiff, thus giving rise to both compensatory and puntive damages pursuant to Title VII.

## COUNT II:  VIOLATION OF 42 U.S.C. § 1981 - RACE DISCRIMINATION

71.     Plaintiff re-alleges and incorporates all averments set forth in paragraphs 1 through 70 above as if fully incorporated herein.

72.     The Defendant has discriminated against Plaintiff because of his race based on the facts identified above and is a violation of 42 U.S.C. § 1981.

73.     Plaintiff has suffered lost wages, benefits and other pecuniary losses as well as deep, humiliation, anxiety and emotional distress.

74.     The unlawful actions of the Defendant complained of above were intentional, malicious, and taken in reckless disregard of the statutory rights of Plaintiff.

## PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff respectfully prays that the Court cause service to issue in this cause upon the Defendant and that this matter be set for trial.  Upon trial by jury thereon, Plaintiff prays that the following relief be granted:

1.     Back wages;
2.     Reinstatement or future pay in lieu of reinstatement;

11

3. Compensatory damages;
4. Punitive damages;
5. Attorney's fees;
6. Lost benefits;
7. Pre-judgement and post-judgment interest;
8. Costs and expenses; and
9. Such further relief as is deemed just and proper.

THIS the 10th day of February 2025.

Respectfully submitted,

ZACKERY CASH, PLAINTIFF

By: /s Louis H. Watson, Jr.
LOUIS H. WATSON, JR. (MB# 9053)
NICK NORRIS (MB# 101574)
Attorneys for Plaintiff

OF COUNSEL:

WATSON & NORRIS, PLLC
4209 Lakeland Drive # 365
Flowood, Mississippi 39232-9212
Telephone: (601) 968-0000
Facsimile: (601) 968-0010
louis@watsonnorris.com
nick@watsonnorris.com